IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>) <br>v.            )<br>)<br>VICKI WHITMIRE-SHAW     )<br>_____ ) | Cr. No. 06-058 (RCL) |

**DEFENDANT'S MEMORANDUM IN AID OF SENTENCING**

Defendant, Vicki Whitmire-Shaw, through undersigned counsel, hereby respectfully submits this memorandum in aid of sentencing pursuant to Federal Rule of Criminal Procedure 32. Based on all the sentencing factors in this case, including the United States Sentencing Guidelines, Ms. Shaw respectfully asks the Court to sentence her to six months of home detention, followed by a period of supervised release of two years.

**BACKGROUND**

On March 1, 2006, the government filed a one-count Information charging Ms. Shaw with Acceptance of Bribes by a Public Official in violation of 18 U.S.C. § 201(b)(2)(A). On March 31, 2006, Ms. Shaw pled guilty, in accordance with a written plea agreement, to the Information. Since her guilty plea, Ms. Shaw has been in compliance with all of her conditions of release. She is scheduled to be sentenced before this Court on July 21, 2006, at 9:30 a.m.

**DISCUSSION**

**I.    THE POST-BOOKER SENTENCING FRAMEWORK.**

Under Justice Breyer's majority opinion in Booker, the "district courts, while not bound to apply the Guidelines, must consult those Guidelines and take them into account when

1

sentencing. See 18 U.S.C. § 3553(a)(4)." United States v. Booker, 543 U.S. 220, 264 (2005) (Breyer, J.). While holding that district courts should still consider the Guideline calculations and ranges for sentencing purposes, the remedial majority in Booker held that courts must consider all the purposes of sentencing set forth in 18 U.S.C. § 3553(a). Pursuant to Booker, therefore, courts must treat the Guidelines as but one, among several, sentencing factors.

Pursuant to 18 U.S.C. §§ 3562 and 3553(a)–which were explicitly endorsed by the Supreme Court in Booker–sentencing courts should consider the need for the sentence imposed:

>(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
>(B) to afford adequate deterrence to criminal conduct;
>
>(C) to protect the public from further crimes of the defendant; and
>
>(D) to provide the defendant with the needed educational and vocational training, medical care, or other correctional treatment in the most effective manner.

Specifically, courts should "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" set forth above.

Section 3553(a) further directs sentencing courts to consider the nature and circumstances of the offense, the history and characteristics of the defendant, the range of sentences available, the need to avoid unwanted sentencing disparities among defendants with similar records who have been found guilty of similar conduct, and the need to provide restitution to any victims of the offenses charged.

Pursuant to 18 U.S.C. § 3661, also expressly endorsed by the Booker majority:

> No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purposes of imposing an appropriate sentence.

Section 3582 of Title 18 states that:

> [t]he court, in determining whether to impose a sentence of imprisonment, and, if a term of imprisonment is to be imposed, in determining the length of the term, shall consider the factors set forth in Section 3553(a) to the extent that they are applicable, recognizing that imprisonment is not an appropriate means of promoting correction and rehabilitation.

Taken together, the directives of Booker, as well as Sections 3553, 3661, and 3582 of Title 18, make it clear that sentencing courts may no longer consider the Guidelines alone in determining the appropriate sentence. With respect to *departures* from the Guideline range, in particular, following Booker courts need not justify sentences outside the Guidelines by citing factors that take the case outside the "heartland." Rather, as long as the sentence imposed is reasonable and supported by the factors outlined in Section 3553, courts may disagree with the range proposed by the Guidelines in individual cases and exercise their discretion.

II.  **UNDER ALL OF THE RELEVANT SENTENCING FACTORS, MS. SHAW SHOULD RECEIVE A SENTENCE OF SIX MONTHS OF HOME DETENTION, FOLLOWED BY TWO YEARS OF SUPERVISED RELEASE**

    A.    Statutory Provisions

Pursuant to the applicable statute, the maximum term of imprisonment for the offense at issue is 15 years.

    B.    Advisory Sentencing Guidelines

    (I).    *Applicable Guideline Range*

The Probation Office, consulting the 2005 edition of the Guidelines Manual, has concluded that the total offense level in this case is 13 and that Ms. Shaw's criminal history

3

category is I, resulting in an advisory Guideline range of 12-18 months.

### C. Section 3553 Factors

As noted above, pursuant to 18 U.S.C. §§ 3562 and 3553(a) sentencing courts should consider the need for the sentence imposed 1) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; 2) to afford adequate deterrence to criminal conduct; 3) to protect the public from further crimes of the defendant; and 4) to provide the defendant with the needed educational and vocational training, medical care, or other correctional treatment in the most effective manner.

Section 3553(a) further directs sentencing courts to consider the nature and circumstances of the offense, the history and characteristics of the defendant, the range of sentences available, the need to avoid unwanted sentencing disparities among defendants with similar records who have been found guilty of similar conduct, and the need to provide restitution to any victims of the offenses charged. Specifically, courts should "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" set forth above.

*I. Nature of the Offense*

While Ms. Shaw in no way wishes to diminish the seriousness of her offense, she notes that the crime to which she pled guilty was neither a crime of violence nor a drug-related offense. Ms. Shaw never intended to harm anyone, in fact, she felt that she was actually helping the store owners who offered her money by not reporting them because they were allowed to stay in business and make ends meet while they tried to scrape together the money to pay for the proper

permits. She understands that her actions were by no means acceptable or appropriate, and she understands that the community at large suffers when people in her position take such actions. However, on a relative scale, the nature of the offense was mild.

*II. Characteristics of the Defendant*

As the PSR reflects, Ms. Shaw grew up in South Carolina as one of fourteen children. Though her essential needs were met, she did not have many luxuries as a child, and after her father died in 1985, Ms. Shaw's relationships with her siblings grew distant. Despite not having a lot of family support, Ms. Shaw has always been gainfully employed and has found happiness with her current husband, to whom she has been married since 2002.

While it appears on the surface that Ms. Shaw's life has been stable and routine, she has had to cope with two very traumatic events that most people would not wish on their worst enemies. In 1990, Ms. Shaw was raped. She was reluctant to go forward with prosecution due to the extreme anxiety and humiliation that accompany such an incident, and she had to sit through two trials before her assailant was finally convicted. Ms. Shaw has done all she can to block this from her memory, so much so that she did not tell her probation officer about this at the PSI. She allowed undersigned counsel to coax it out of her after deciding that she wanted the Court to be aware of the severity of the emotional distress that has burdened her for the past sixteen years.

Violent sexual assault is more than any person should have to cope with in one lifetime. However, fortune has not been on Ms. Shaw's side. In 1994, Ms. Shaw's only son, Phillip Whitmire, was murdered. He was stabbed and killed at a nightclub. The person responsible for his death was tried, convicted, and sentenced, but Ms. Shaw has never recovered from the pain of

losing a child.  After Phillip's death, Ms. Shaw became very depressed.  She began gambling heavily, which in turn put a strain on her finances.  She has never been through grief counseling for her son's death and it still weighs heavily on her mind.

Despite the obstacles she has encountered, Ms. Shaw is a caring mother, grandmother, and wife.  She speaks every day with her daughter, Victoria, with whom she is very close.  She does all the cooking and cleaning at home, and she worries about her husband's well being were she to be out of the house for an extended period of time.  She is also concerned about the effect of her absence on her granddaughter, Tanzania, who Ms. Shaw has helped raise since Phillip died.  The two are extremely dependent upon one another for love and support.   Though Ms. Shaw is anxious about her fate, she remains committed to her family, which is why she recently began working again to start helping with the bills.  She began working despite knowing that she could be incarcerated in this case.

Ms. Shaw does not blame her behavior as it relates to the bribery conviction on any particular incident in her life, indeed, she knows her actions are inexcusable.  Nevertheless, she is extremely distressed.  She has done a lot of reflecting over the past seven months, and she has realized that maybe it is finally time for her to address the pain and the grief she has brushed aside for so long, which appear to be the root of her unhappiness and her financial problems.  Ms. Shaw is a very troubled individual.  She is someone who has not been dealt a fair hand, someone who will have to carry burdens heavier than most people can imagine for the rest of her life, someone who deserves a break.

*III. Appropriate Sentence*

Given all the circumstances, it would appropriate in this case to sentence Ms. Shaw to a

period of home confinement rather than incarceration. Home confinement would serve the dual purposes of punishing her for her actions as well as allowing her to work and take care of her husband and granddaughter, both of whom depend on her greatly. Home confinement would also allow Ms. Shaw an opportunity to reflect on her actions and perhaps begin some emotional healing that is long overdue in her life. It is clear that Ms. Shaw's behavior was inappropriate, inexcusable, and wrong. However, she is not somebody who will benefit from incarceration, nor will the community benefit from throwing her in jail. What would be most prudent for all parties involved is to sentence Ms. Shaw to home confinement, order her to receive counseling and therapy for her gambling addiction and her grief, and keep her on supervision to verify that she gets the help that she needs. This is the only sentence that will allow Ms. Shaw to emerge from her depression, maintain support from home, and become a law-abiding, productive member of society once again.

## **CONCLUSION**

      For the reasons set forth above, as well as for any others the Court may deem fair and reasonable, Ms. Shaw asks the Court to sentence her to six months of home confinement, followed by two years of supervised release. Such a sentence would be sufficient, but not greater than necessary, to comply with the purposes set forth in 18 U.S.C. § 3553.

                                                                  Respectfully submitted,

                                                                  A.J. Kramer
                                                                  Federal Public Defender


                                                                  _____/s/_____
                                                                  Rita Bosworth
                                                                  Assistant Federal Public Defender
                                                                  625 Indiana Avenue, N.W.
                                                                  Washington, D.C.  20004
                                                                  (202) 208-7500 ext.126